# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE THIRD PARTY SUBPOENAS AD TESTIFICANDUM<br><br>SHILPA PHARMA, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>　　　　Defendant,<br><br>　　-and-<br>NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>　　　　Defendant-Counterclaim Plaintiff,<br><br>　　v.<br><br>SHILPA PHARMA, INC.,<br><br>　　　　Plaintiff-Counterclaim Defendant<br><br>　　-and-<br><br>SHILPA MEDICARE LIMITED,<br><br>　　　　Counterclaim Defendant. | Case: 1:22−mc−00111<br>Assigned To : Nichols, Carl J.<br>Assign. Date : 11/3/2022<br>Case No. Description: Misc.<br><br><br><br>Case No. District of Delaware<br>Civil Action No. 21-558-MN |

### NONPARTY SUGHRUE MION PLLC'S MOTION TO QUASH SUBPOENA, FOR A PROTECTIVE ORDER AND FOR SANCTIONS



RECEIVED

NOV - 3 2022

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

**I. Introduction**

Sughrue Mion PLLC ("Sughrue"), litigation counsel to Shilpa Pharma, Inc. and Shilpa Medicare, Inc. (collectively "Shilpa") moves this Court for an Order quashing the deposition subpoena[1] served on it by Novartis Pharmaceuticals Corporation ("Novartis"), prohibiting the deposition of Sughrue and protecting it from further discovery by Novartis, and for an appropriate sanction of reasonable expenses, including attorney's fees. The Court should also protect Sughrue from the document requests included with Novartis's subpoena. This motion is necessary because Novartis has subpoenaed Sughrue in connection with not only the very patent Sughrue's client Shilpa has asserted against Novartis in the underlying litigation, pending in the District of Delaware, but in respect of its representation of Shilpa including its knowledge of Shilpa's activities in preparing for and conducting this litigation.

The law prohibits a party from deposing its opponent's lawyers if the information it seeks to obtain is available through another source, and the information Novartis is attempting to discover is available through other, non-attorney sources. In parallel with its subpoena to Sughrue, Novartis has noticed the depositions of eight (8) individual fact witnesses as well as Shilpa itself, through a 30(b)(6) deposition notice. But it has not taken any of those depositions yet. Rather, Novartis' first attempts to discover the information it seeks is through Shilpa's litigation counsel, Sughrue Mion, PLLC. The information Novartis seeks to discover is available through these other sources. Not only that, but the deposition testimony Novartis seeks from Sughrue is not relevant,

---

[1] The subpoena is attached as Exhibit 1.

let alone critical, to the case and it is protected from disclosure by the attorney-client privilege and/or the attorney work product doctrines. The present subpoena is a transparent attempt by Novartis and its counsel Gibson, Dunn & Crutcher LLP to annoy and harass Shilpa's counsel and to disrupt their preparation for this case.  The Court should quash Novartis's subpoena in its entirety and sanction Novartis and Gibson, Dunn & Crutcher for their abusive litigation misconduct.

## II.     Background and Summary of Argument

Shilpa sued Novartis for patent infringement in the U.S. District Court for the District of Delaware in April, 2021. *See Shilpa Pharma, Inc. v. Novartis Pharm's Corp.,* Civil Action No. 21-558-MN. Shilpa's U.S. Patent No. 9,266,816 is directed to a chemical compound called fingolimod hydrochloride used by Novartis in the manufacture of Gilenya®, a drug Novartis commercializes to treat certain forms of multiple sclerosis. As part of its Complaint, Shilpa alleged that Novartis' infringement was willful. Novartis filed counterclaims alleging inequitable conduct in the procurement of the '816 patent-in-suit and further alleging antitrust violations, *Walker Process* fraud, sham litigation and other related claims. The antitrust and related claims have been stayed in the District Court.

The inequitable conduct claims are directed to Shilpa and several individual Shilpa employees based on activities alleged to have occurred during prosecution of the '816 patent before the Patent Office, from 2012-2016.[2]  The '816 patent is based on Application Ser. No. 13/635,207

---

[2] The '816 Patent is based on Appln. Ser. No. 13/635,207 (the "'207 Application") filed at the Patent Office.

(the '207 application filed at the Patent Office. The Sughrue firm did not represent Shilpa or the applicants in respect of the '207 Application before the Patent Office and had no input into any aspect of its prosecution. Sughrue did not begin representation of Shilpa in this matter until early 2016, contemporaneous with the patent's issuance on February 23 of that year. There are no allegations in Novartis' counterclaims directed to Sughrue.

Notwithstanding, Novartis' deposition subpoena to Sughrue Mion seeks testimony on twenty-two (22) topics going to the core of the law firm's relationship with Shilpa, its representation of Shilpa in this case, and the communications it has had with Shilpa over years of representation. The nonprivileged factual information that it seeks (underlying any communications with Shilpa) is available from other deponents and will likely be the subject of upcoming depositions. There is no basis in fact or law for the deposition of Sughrue based on its *knowledge* of the same subject matter. Little more than a litigation tactic, Novartis seeks to disrupt the case schedule and create unworkable distraction through collateral matters that have nothing to do with the merits of the case.

The Court should quash this subpoena and enter a protective order barring the deposition and related document requests. Depositions of opposing counsel is only warranted where Novartis can show (1) the information it seeks can only be obtained by deposing Sughrue; (2) the information it seeks is both relevant and nonprivileged; and (3) the information it seeks is crucial to the case. Novartis does not and cannot come close to making any of the required showings for the Sughrue law firm. *Corp. for Public Broadcasting, et al. v. American Automobile Centennial Comm'n.*, 1999 WL 1815561, at *1 (D.D.C. Feb. 2, 1999) (*quoting Shelton v. American Motors*

3

*Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)).

First, the underlying factual information sought can be obtained from other sources, namely the Shilpa fact witnesses and third party witness Mr. Ming Chow whose depositions have been noticed but not yet taken. Novartis does not come close to making any of the required showings for the Sughrue law firm.

Second, the information that Novartis seeks to discover from Sughrue is protected from disclosure by the attorney-client privilege or the work-product doctrine. The only non-privileged information known by Sughrue is already in the public domain in the file histories of the patents-in-suit, the prior art, and the public docket of the Delaware litigation, all of which Novartis possesses. The remaining communications and information, such as Sughrue's client communications, internal communications, and mental impressions, are protected from disclosure.

Third, Sughrue's *knowledge* of the patent, prior art, and its client's activities is not relevant, let alone crucial, to this suit. While *Shilpa's* knowledge of the matters listed in the twenty-two (22) deposition topics may be relevant to one or more issues in the case, *Sughrue's* knowledge and communications regarding the same is wholly irrelevant to any party's claim or defense, and is protected from disclosure under the attorney-client privilege and the attorney work product doctrine. Indeed, Novartis has never explained why the information it seeks from Sughrue is relevant to any claim or defense in this suit, let alone crucial.[3]

---

[3] The subpoena is additionally improper because it demands compliance by Sughrue (a Washington, D.C. law firm) at the New York Offices of Gibson Dunn & Crutcher LLP in violation of Fed.R.Civ.P. 45(c), which limits the place of the deposition and the production of documents to

Counsel for Sughrue objected to the subpoenas and explained to Novartis's counsel that the deposition of Sughrue was improper and that the subject matter of the twenty-two (22) topics was largely privileged and directed to issues that have been stayed from discovery. Novartis was asked to withdraw its deposition subpoena to Sughrue, but it has refused to do so.[4]

**III. Legal Standards and Argument**

Although parties may obtain discovery regarding any nonprivileged matter that is relevant to a party's claim or defense, courts have discretion to limit the scope of discovery when it is cumulative or can be obtained from other more convenient, less burdensome, or less expensive sources. Fed. R. Civ. P. 26(b)(l)-(2). The Court may also limit discovery "for good cause" and "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "forbidding the discovery." Fed. R. Civ. P. 26(c)(1).

Depositions of opposing counsel are presumptively disallowed. See HANDBOOK FED. CIV. DISC. & DISCLOSURE § 1:78 (4th ed. July 2018 update) ("Litigation counsel are presumptively entitled to a protective order against being deposed by an adversary*."); Coleman v. D.C.*, 284 F.R.D. 16, 18 (D.D.C. 2012) ("Courts [] presume that deposing opposing counsel creates

---

aa location "within 100 miles of where the person resides." Fed. .R. Civ. P. 45(c)(1)(A); Fed. R. Civ. P. 45(c)((2)(A).

[4] Novartis' Rule 30(b)(6) Notice of Deposition is defective for an additional reason  The revised Rule requires the "the serving party and the organization must confer in good faith about the matters for examination" and the "subpoena must advise a nonparty organization of its duty to confer with the serving party and to designate each person who will testify." Fed.R.Civ.P. 30(b)(6) (2021).  Novartis' subpoena failed to "advise [Sughrue] of its duty to confer with the serving party and to designate each person who will testify" (*see* Exhibit 1), and Novartis refused to "confer in good faith about the scope of the deposition topics." (*see* email of October 24, 2022 from E. Whitcher to R. Saliba, attached as Exhibit 2).

an inappropriate burden or hardship, and the burden is on the party seeking the deposition to show otherwise."); *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 8 (D.D.C. 2009) ("when seeking to depose opposing counsel, the cards are stacked against the requesting party from the outset and they must prove the deposition's necessity."); *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak C*o., 276 F.R.D. 376, 380 (D.D.C. 2011). This presumption against deposing opposing counsel exists because such depositions "undermine attorney-client communications, present unique opportunities for harassment, disrupt opposing counsel's preparation, may lead to opposing counsel's disqualification, and may spawn collateral litigation on issues of privilege, scope, and relevancy." *Coleman*, 284 F.R.D. at 18.

To overcome the presumption against deposing opposing counsel, the party seeking such a deposition must show "that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."[5] *Guantanamera*, 263 F.R.D. at 8 (citations and quotation marks omitted). In most circumstances, the mere request to depose an opposing party's attorney constitutes the good cause required to obtain a Rule 26(c) protective order. *See, e.g., S.E.C. v.*

---

[5] These factors were first articulated by the Eighth Circuit Court of Appeals in *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir. 1986). While the Court of Appeals for the D.C. Circuit has not expressly adopted the *Shelton* test, a number of D.C. Courts have applied this test to bar requests to depose opposing counsel. *See, e.g., United States v. All Assets Held in Account Number 80020796,* 13-cv-1832 (JDB), 2019 U.S. Dist. LEXIS 805, 2019 WL 95605 at *4 (D.D.C. Jan. 3, 2019); *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.,* 263 F.R.D. 1, 9 (D.D.C. 2009); *Coleman v. District of Columbia,* 284 F.R.D. 16, 18 (D.D.C. 2012) ("When a party seeks to depose opposing counsel, the normally permissive discovery rules become substantially less so."); *Corp. for Pub. Broad. v. Am. Auto. Centennial Comm'n*, No. 97-cv-1810, 1999 U.S. Dist. LEXIS 1072, 1999 WL 1815561, at *1 (D.D.C. Feb. 2, 1999).

*Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992) ("Because deposition of a party's attorney is usually both burdensome and disruptive, the mere request to depose a party's attorney constitutes good cause for obtaining a Rule 26 [] protective order") (internal citations omitted). Good cause for the issuance of a protective order applies here the same reasons noted in these cases.

Under the foregoing legal standards, Sughrue's deposition should be precluded. Novartis's subpoena should be quashed and a protective order should be entered because the deposition sought is neither appropriate nor necessary. All of the underlying factual information that Novartis seeks from Sughrue's deposition could either be obtained through other sources, is privileged and/or protected as attorney work product, and has no relevance to this case. *Shelton*, 805 F.2d at 1327; *Corp. for Pub. Broad. v. Am. Auto. Centennial Comm'n*, No. 97-01810, 1999 U.S. Dist. LEXIS 1072, 1999 WL 1815561, at *1 (D.D.C. Feb. 2, 1999).

### A. All Nonprivileged Information That Novartis Seeks Can be Obtained from Other More-Accessible and Less Burdensome Sources

The first criterion that a party must satisfy before deposing opposing counsel is to show that "no other means exist to obtain the information than to depose opposing counsel." *Guantanamera*, 263 F.R.D. at 8; *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). As discussed below, Novartis cannot come close to satisfying this first criterion because the underlying factual information it seeks from Sughrue can be obtained elsewhere.

### 1. Client Representation

Topic No. 3 seeks deposition testimony of Sughrue regarding its "representation of Shilpa relating to the prosecution of the '207 application and/or enforcement of the '816 patent." (Topic

7

3). The topic is neither narrowly focused nor related to issues in the case. Apart from the breadth and non-specificity of the topic, and putting aside the fact that Sughrue did ***not*** represent Shilpa during the prosecution of the '207 application, it is hard to imagine any aspect of this topic that would not be privileged or subject to the attorney work product protections, since Sughrue's representation of Shilpa is defined by communications between client and attorney, the exchange of information between client and attorney, communications between attorney and attorney, and the mental impressions and thought processes of counsel in representing Shilpa regarding the enforcement of the 816 patent. *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 2011 U.S. Dist. LEXIS 89564 (D.D.C. 2011)("the Court nonetheless finds to be inappropriate the deposition sought here of former counsel concerning that counsel's representation of a party during reexamination of the same patent concurrently at issue in a pending patent infringement action against the same party.") *Id.* at 380. For nearly identical reasons, a deposition seeking testimony regarding Sughrue's representation of Shilpa is inappropriate.

Publicly available information regarding Sughrue's representation Shilpa can be found in unsealed documents filed on the Court's docket in the District of Delaware. Substantive nonprivileged information about the prosecution of the '207 application can be obtained from a number of the witnesses already noticed for deposition, including the '816 patent inventors or from Shilpa itself. *SEC v. Johnson*, Civ. No. No. 05-36 (GK). 2007 U.S. Dist. LEXIS 118856 (D.D.C. Aug. 22, 2007) ("Tuli can obtain that information by other means . . . a party seeking to take the deposition must show that "no other means exist to obtain the information,' (citation omitted) not that the other means of obtaining the information are inconvenient."). *Id.* at *5. Substantive

information regarding the enforcement of the '816 patent may likewise be obtained from other fact witnesses whom Novartis has already noticed for deposition, to the extent not privileged. *Id.* But a broad-based topic directed to Sughrue's representation of its client is particularly improper, abusive, and an unacceptable misuse of the discovery process.

### 2. Communications

Novartis seeks to depose Sughrue on communications with Shilpa regarding the '816 patent and the '207 application that led to the patent, as well as communications with Novartis and third parties relating to the same. (Topics 2, 4-7). Communications between Sughrue and its client Shilpa about the '816 patent or its prosecution history are privileged or work-product protected for the reasons stated above. *Sterne Kessler,* 276 F.R.D. at 385 ("If deposed, much of the information sought from the [law firm], such as "client communications, internal communications, and mental impressions," would likely be protected from disclosure by attorney-client privilege or the work-product doctrine."). So too are its communications with Shilpa concerning the enforcement of the '816 patent in this litigation. *Id.*

The substance of any communications with third parties regarding the '816 patent can be obtained from those parties directly to the extent not privileged or otherwise protected.[6] Communications with Novartis can be obtained elsewhere as well. In particular, Novartis has

---

[6] Novartis's deposition topics mentioned Mr. Ming Chow. Mr. Chow is an attorney who prosecuted the '816 patent for a period of time until 2013. Novartis has already issued a Document subpoena to Mr. Chow who produced a number of documents in response. Separately, Novartis has issued a deposition subpoena to Mr. Chow, presumably based on his role as prosecution attorney.

already issued deposition notices to the Shilpa employees who attended a meeting with Novartis' in-house counsel, Mr. Peter Waibel, in 2016. Communications between Novartis and the meeting attendees will doubtless be the subject of the depositions of the noticed individuals. Because the communications sought in Topics 2 and 4-7 are thus available from other more accessible and less burdensome sources, there is no basis for deposition of Sughrue on these topics.

### 3. "Awareness" of Facts

Topics 8-22 seek testimony on Sughrue's *awareness* of the prosecution of the '816 Patent, the first infringing sales and the first public use by Novartis, Novartis's new drug application and FDA submissions, third party suppliers, prior art references, any alleged sale of prior art embodiments by others, communications between Shilpa and third parties, internal testing done at Shilpa, Shilpa's products, etc. Substantive testimony regarding the facts relating to all of these topics is available from the individual witnesses Novartis has noticed or deposition or Shilpa itself through its notice under Fed. R. Civ. P. 30(b)(6). Sughrue's *awareness* of the factual bases for those topics is neither relevant to, nor probative of, the infringement, validity and unenforceability issues in this case.[7]

In *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376 *; 2011 U.S. Dist. LEXIS 89564 (D.D.C. 2011), District Court defendant Eastman Kodak issued a

---

[7] In an email of October 24, 2022, Novartis refused to withdraw the deposition subpoena to Sughrue, alleging for the first time that "all of the deposition topics relate to inequitable conduct, which remains a live issue." (Attached as Exhibit 2). But the deposition topics to Sughrue have nothing to do with the inequitable conduct allegations made against Shilpa and one or more of its employees. (*See* Novartis' Amended Answer and Counterclaims, D.I. 85, ¶¶34-74.). attached as Exhibit 3. And none of the inequitable conduct claims are directed to Sughrue as litigation counsel.

deposition subpoena to the Plaintiff's law firm (Sterne Kessler) seeking information on a variety of topics related to their representation of the plaintiff during the re-examination of one of the patents asserted against Kodak in the underlying litigation. Similar to Novartis's deposition subpoena in this case, the subpoena to the Sterne Kessler law firm sought discovery relating to the prosecution of the patent in suit, the law firm's communications with its client and other attorneys who prosecuted the patent in suit, the law firm's knowledge of the District Court litigation, etc. *Id.* at 378. Kodak further argued that it was "entitled to examine [the petitioner's] relationship with the '074 Patent inventors" because it could lead to factual information relevant to Kodak's defenses. *Id*. at 384. Granting the motion to quash, the court explained the concerns about disruption, distraction and privilege attendant to allowing the deposition of an opposing party's litigation firm, and stated "[t]his is exactly the type of fishing expedition that courts have attempted to prevent when seeking to deter deposition of counsel." *Id.* at 383. Here, as in *Sterne Kessler*, Novartis's subpoena seeking testimony on, *e.g.,* sales of fingolimod hydrochloride (Nos. 10, 21), the FDA approval of Gilenya® (No. 12, the first use of Gilenya®, by patients (No. 11), knowledge of Shilpa's internal testing (Nos. 14-17, 19-20) etc. is little more than a fishing expedition which should not be allowed to go forward.

In *State Farm Mut. Auto. Ins. Co. v. Stavropolskiy*, No. 15-cv-5929, 2017 U.S. Dist. LEXIS 113743 (E.D. Pa. July 20, 2017), Defendants moved to compel the deposition of plaintiff's attorneys of record in the case in order to discover "what State Farm knew and did regarding its investigations into the Defendants' alleged fraud prior to November 2013." *Id*. *5. Plaintiff's counsel argued that alternative means existed to obtain the requested information, based on the

deposition of plaintiff's corporate deposition designee. Upon review of the designees transcript, the court denied defendant's motion, stating that defendants failed to demonstrate "any additional relevant non-privileged information that outside counsel could provide that it did not learn (or could not have learned) from State Farm's corporate designee." *Id*. at 8.

Sughrue's *awareness* of the underlying facts Novartis seeks is not relevant to any issue in the case. The preparation of Shilpa's litigation firm for a deposition on these issues is overly burdensome and unnecessary, particularly because the case is at the end of fact discovery, seventeen (17) depositions have been noticed by both sides, final contentions are shortly due and opening expert reports fall due on November 23. *Cf. Shelton*, 805 F.2d at 1327 (depositions of opposing counsel "not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation"); *M & R Amusements Corp. v. Blair*, 142 F.R.D. 304, 305 (N.D. Ill. 1992) ("[d]eposing an opponent's attorney is a drastic measure. It not only creates a side-show and diverts attention from the merits of the case, its use also has a strong potential for abuse. Thus, a motion to depose an opponent's attorney is viewed with a jaundiced eye and is infrequently proper."). Novartis has the ability to discover the underlying facts it seeks from the more than twelve (12) witnesses it has noticed for deposition. Deposing Shilpa's litigation counsel is little more than a sideshow Novartis and the Gibson Dunn firm have staged to divert Shilpa's resources from the merits of the case. *Id.*

### B. The Information that Novartis Seeks from Sughrue Is Privileged

Sughrue's communications with its client Shilpa about the '816 patent or the application leading to its issuance are privileged. Sughrue's awareness and knowledge of the patent in suit,

12

its prosecution history, prior art, bases for alleging infringement, invalidity, etc. are also privileged or subject to the protections the attorney work product doctrine because they are all based on communications with its client or attorney research/investigation to further representation of Shilpa in the underlying litigation.

For example, a number of the topics seek to probe Sughrue's knowledge of internal testing related to the claimed fingolimod hydrochloride compound, whether undertaken during prosecution or not. (*see e.g.* 16, 17, 19 20). It is difficult to imagine what knowledge or awareness Sughrue may have of these matters that is not privileged or otherwise protected from disclosure.

Beyond these exemplary topics, everything known by Sughrue is protected by attorney-client privilege or the work product doctrine. For example, internal attorney discussions, draft papers, attorney's mental impressions about the '816 patent, its prosecution history, the prior art, the infringement allegations, the invalidity challenges, and communications with the client are all clearly protected from disclosure.

The information that may not be privileged, *i.e.,* communications with Novartis or third parties (Topics 5-6), is already the subject of outstanding deposition notices from Novartis and can be addressed by the noticed deponents, to the extent not privileged or otherwise protected.

### C. None of the Information Sought from Sughrue Is "Crucial" to Novartis' Case

To depose an opposing party's counsel, the information sought must be both relevant and crucial to the case. *Nationwide Mut. Ins.*, 278 F.3d at 629 (denying attorney depositions where defendant "has not explained why the information is crucial to the preparation of its case" concerning alleged arbitrator bias based on relationship with opposing counsel); *Thiessen*, 267

F.3d at 1112 (refusing deposition of in-house counsel who allegedly engaged in discovery cover-up, because of "the availability of other avenues for obtaining the information"); *D.O.T. Connectors, Inc.*, 2001 WL 34104929, at *3 (refusing deposition of party's attorney where party "has not identified anything which others could not or did not reveal"); *M & R Amusements Corp.*, 142 F.R.D. at 305, 306 n.3 (deposition of party's attorney – a "drastic measure" that "only creates a side-show and diverts attention from the merits of the case" – refused on basis that "[u]ntil defendant shows that all other reasonable alternatives have been pursued to no avail, he will not be able to depose his opponent's attorney"). Here, Sughrue's "communications" with its client and others and its "awareness" of: (1) events in the prosecution history, (2) Novartis' new drug application, (3) Novartis' products and sales, and (4) Shilpa's research, testing, products and sales are not relevant – much less crucial- to the infringement, validity and damages issues in this case. Nor are they relevant to Novartis' inequitable conduct claim, which is not directed to Sughrue nor otherwise related to the 22 deposition topics in Novartis' deposition subpoena. Sughrue did not prosecute the patent in suit, it did not advise Shilpa during prosecution, and its awareness of the matters recited in the subpoena is irrelavant to the infringement, invalidity, or unenforceability allegations in this suit.

V.     **Novartis' Requests For Documents**

Requests Nos. 1-3 and 7 seek Documents exchanged with or reflecting communications with Shilpa, and attorney notes or memoranda memorializing the same. There can be no serious debate that these documents are protected by the attorney-client privilege or the attorney work product doctrine. Requests Nos. 4-6 seek documents relating to communications with third parties

regarding the prosecution of the '207 application or the enforcement of the 816 patent. As stated, Sughrue did not represent Shilpa in respect of the prosecution of the '207 application, so no responsive documents exist. To the extent any communications exist that relate to the enforcement of the '816 patent, they are protected by the attorney work product doctrine.

Request numbers 8 and 9 seek fee arrangements and invoices submitted to Shilpa. Billing records of attorneys are subject to the attorney-client privilege because they reveal the nature of the services rendered. *See, e.g., Fidelity & Deposit Co. of Maryland v. McCulloch*, 168 F.R.D. 516, 523 (E.D. Pa. 1996) (holding billing records subject to attorney-client privilege to extent records reveal nature of services performed); *United States v. Keystone Sanitation Co.*, 885 F. Supp. 672, 675 (M.D.Pa. 1994); *Leach v. Quality Health Services*, 162 F.R.D. 499, 501-02 (E.D.Pa. 1995)(attorney bills are privileged "to the extent that they reveal litigation strategy and/or the nature of services performed."). Fee arrangements are also privileged to the extent they reflect legal advice of counsel or disclose legal strategies between counsel and client. In any event, billing records and fee arrangements are not proportional to the needs of this case and the request for their production is abusive.

For the same reasons Novartis's subpoena seeking Sughrue's testimony should be quashed, Novartis's subpoena for documents from Sughrue should be quashed as well. Sughrue is litigation counsel to Shilpa and is presumptively entitled to a protective order against discovery from an adversary such as Novartis. See *Coleman*, 284 F.R.D. at 18; *Guantanamera*, 263 F.R.D. at 8; and *Sterne Kessler*, 276 F.R.D. at 380.

**VI.     Shilpa is Entitled to its Reasonable Expenses, Including Attorney's Fees**

Fed. R. Civ. P. 26(c)(3) provides that motions seeking a protective order from discovery include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.  Plaintiff certifies that it advised Novartis of the impropriety of the subpoena to Sughrue in a letter of October 17, 2022, for largely the same reasons set forth in this motion, and asking that the subpoena be withdrawn. Novartis responded in an October 24, 2022 email, refusing to withdraw the subpoena and attempting to relate the subject matter to the inequitable conduct claims directed against Shilpa and individual employees.  Novartis's refusal necessitated the instant motion.

Fed. R. Civ. P. 26(c)(3) that "Rule 37(a)(5) applies to the award of expenses" for motions for a Protective Order. Rule 37(a)(5)(A) provides that if the motion is granted, the court "must" order payment of "the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless one of the three specified exceptions applies. See Fed R. Civ. P. 37(a)(5)(A)(i)-(iii). Here, no exception applies. First, movant did confer in good faith to attempt to resolve this dispute. Rule 37(a)(5)(A)(i). Plaintiff's service of this deposition subpoena was plainly not "substantially justified" under the case law. Rule 37(a)(5)(A)(ii). Shilpa's counsel's letter of October 17 specifically notified Plaintiff that there was no basis for this deposition, and requested its withdrawal.  In spite of the overwhelming authority prohibiting fishing expeditions of opposing counsel, Novartis and the Gibson Dunn firm, despite notice, have proceeded with full knowledge that their subpoena to Sughrue Mion is improper.  Novartis and the Gibson Dunn firm have knowingly abused the discovery process and they should be sanctioned. As such, the

circumstances make an award of expenses just. Rule 37(a)(5)(A)(iii).

## IV. Conclusion

For the foregoing reasons, it is respectfully requested that this Court quash the deposition subpoena of Sughrue Mion, PLLC, issue a protective order precluding Novartis from seeking further discovery from Sughrue, and award Sughrue its reasonable attorneys' fees and expenses for having to defend against this subpoena.

Date: November 3, 2022                                    Respectfully Submitted

/s/ *Raja Saliba*
_____
SUGHRUE MION, PLLC
Raja Saliba (DC Bar# 465832)

Fadi N. Kiblawi
2000 Pennsylvania Ave., NW
Washington, DC 20037
(202) 293-7060
rsaliba@sughrue.com
fkiblawi@sughrue.com

*Counsel for Sughrue Mion, PLLC*